UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

    Plaintiff,

v.

JOURNAL DISPOSITION CORPORATION,

    Defendant.

File No.  1:10-CV-886

HON. ROBERT HOLMES BELL

## OPINION

This action under the Americans with Disabilities Act is before the Court on Defendant's motion for summary judgment (Dkt. No. 54) and on Plaintiff's motion to file a supplemental response brief (Dkt. No. 68).  For the reasons that follow, Plaintiff's motion will be granted and Defendant's motion will be granted in part and denied in part.

### I.

Derek Nelson began working for Defendant Journal Disposition Corporation (previously known as IPC Print Services) in 1997 as a machinist and later moved to a position as a maintenance worker on the night shift.  In July 2008, Nelson was diagnosed with cancer.  Dr. Lester, his oncologist, indicated that he needed to undergo chemotherapy, radiation, and surgery, and that the length of his incapacitation was indeterminate. (Ex. 10.) Nelson applied for, and was granted, benefits under Defendant's Short Term Disability Insurance Policy.

The Short Term Disability Insurance Policy provided in pertinent part:

Short term disability leave and FMLA leave run simultaneously. Total leave time is limited to 26 weeks within any 12 month rolling period. After 26 weeks, the employment relationship may be terminated. An employee, whose employment has been terminated, should contact HR when they are able to return to work, to inquire about any open positions for which they are qualified.

(Def. Ex. 2, Pl. Ex. 19, STD Policy)

APS Healthcare, the administrator of Defendant's Short Term Disability program, approved Nelson for short term disability leave beginning July 28, 2008. Pursuant to the policy, Nelson's short term disability leave was scheduled to exhaust on January 27, 2009.

On November 7, 2008, Nelson's oncologist released him to work on a part-time basis. Dr. Lester's note advised that Nelson "recently underwent surgery and is anticipating starting chemotherapy in the near future – about 3 weeks. In the interim he is requesting to return to work for 4 hours daily, 5 days a week." (Pl. Ex. 12, Lester 11/7/08 letter). Defendant accommodated this request.[1] However, Defendant transferred Nelson to the first shift where there would be better coverage when Nelson was not there. (Nelson Dep. 49; Drake Dep. 30.) By December 1, 2008, Nelson was no longer able to work and returned to full-time disability. (Thumm Dep. 115-16.) On December 4, 2008, Defendant received a disability verification form from Carolyn Dasher, the Disability Case Manager for APS Healthcare, advising that Nelson "has now started his final round of chemotherapy and will be off of

---

[1] Both the time that Nelson was on total disability as well as the time he worked part-time and was on partial disability counted toward the 26 week short-term disability period. (Thumm Dep. 62-63, 119.)

work full time." (Def. Ex. 11, APS Disab. Verif. at 5.) As of December 4, 2008, Nelson anticipated approximately 4-5 more weeks of chemotherapy. (*Id.*)

On January 2, 2009, Dr. Lester indicated that Nelson was able to return to work as tolerated, but that this was subject to change depending on his reactions to his chemotherapy treatments. (Def. Ex. 14, Lester 1/2/09 letter.) Nelson returned to work on January 5, 2009. Defendant approved Nelson's request that he be allowed to work four or more hours a day, as tolerated, for five days, and then have the following week off for chemotherapy. (Nelson Dep. 55; Thumm Dep. 131.) At the time Defendant approved this abbreviated work schedule, Defendant believed that Nelson would have completed his chemotherapy by the end of the month. (Mansfield Dep. at 81.)

On January 23, 2009, Nelson advised Dasher that his chemotherapy would extend into May 2009. (Def. Ex. 11, p. 5.) Around the same time, Nelson also met with Thumm, and advised that they had extended his chemotherapy into May, and that he was not sure at what point he would be able to return to work on a full-time basis. (Thumm Dep. 118, 154).

On January 30, Defendant telephoned Nelson to advise that Nelson was terminated. The termination letter explained the basis for the termination as follows:

> Per our discussions, and IPC Print Services Medical Disability Policy, total medical leave time is limited to 26 weeks within any 12 month rolling period. Our records indicate that you began your medical leave on July 23, 2008. Your 26 weeks of medical leave was complete on January 27, 2009. Per our policy, your employment is being terminated as of today, Friday, January 30, 2009. Pleas contact HR when you are able to return to work to inquire about any available positions.

(Def. Ex. 16.)

3

Nelson completed his chemotherapy in May 2009. In June, Nelson reapplied for work with Defendant. Defendant did not have any openings in June, but on July 28, 2009, Nelson was rehired by Defendant to work in the mail room as the mail line lead. (Def. Ex. 17.) Nelson is happy in his position in the mail room and has chosen not to bid for a position in the maintenance department of the company which acquired Defendant's assets. (Nelson Dep. 84-85, 93-95.)

On September 9, 2010, Plaintiff Equal Employment Opportunity Commission filed this action, alleging that Defendant has engaged in unlawful employment practices in violation of the ADA by failing to provide Nelson with a reasonable accommodation in the form of continued part-time work and discharging him from employment based on its short term disability policy. (Compl. ¶ 8.) Plaintiff seeks damages for Nelson, as well as injunctive relief.

On December 10, 2010, Defendant changed its name from IPC Print Services to Journal Disposition Corporation. On the same day, IPC Acquisition Corporation ("IPCAC") purchased the assets of Defendant Journal Disposition Corporation. The purchase was guaranteed by IPCAC's corporate parent, Walsworth Publishing Company, Inc. Defendant is no longer in operation. Nelson continues to be employed by IPCAC in its mail room.

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant

4

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If Defendant carries its burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587).  Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

Plaintiff has requested leave to file a supplemental response brief to address issues first raised in Defendant's reply brief.  Defendant opposes the motion because Plaintiff has not shown good cause for the request.

It does not appear that Defendant's reply brief included new evidence or argument that would require a supplemental response, but neither does Plaintiff's supplemental response

raise any new matters that would prejudice Defendant. In the interests of having a complete record, the Court will grant Plaintiff's motion, and will take Plaintiff's supplemental brief into consideration in deciding Defendant's motion for summary judgment.

### IV.

The ADA makes it unlawful for an employer to discriminate against a qualified individual with a disability in the terms and conditions of employment based on that individual's disability. 42 U.S.C. § 121112(a). A disability is "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). A "qualified individual with a disability" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In order to recover on an ADA discrimination claim, a plaintiff must show that (1) he suffers from a disability; (2) he is qualified to perform the essential functions of the job in question, either with or without reasonable accommodation; and (3) he was discriminated against solely by reason of his disability. *Monette v. Elec, Data Sys. Corp*, 90 F.3d 1173, 1178 (6th Cir. 1996).

Defendant has moved for summary judgment on Plaintiff's ADA claim on the basis that Plaintiff cannot establish a prima facie case of discrimination under the ADA. Specifically, Defendant contends that Plaintiff did not request a reasonable accommodation. Plaintiff contends that summary judgment is inappropriate because there are questions of fact

as to whether the requested accommodation was reasonable, whether Defendant failed to engage in the mandatory interactive process in good faith, and whether Defendant has shown an undue hardship.

### A. Reasonable Accommodation

"If a disabled employee requires an accommodation, the employee is saddled with the burden of proposing an accommodation and proving that it is reasonable." *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010) (citing *Monette*, 90 F.3d at 1183); *see also Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007) (noting that an ADA plaintiff "bears the initial burden of proposing an accommodation and showing that accommodation is objectively reasonable."). "The employee's initial burden of articulating a reasonable accommodation need not be onerous . . . the plaintiff must merely 'suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits.'" *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 781(6th Cir. 1998) (quoting *Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)). In *Cehrs*, the Sixth Circuit held that there was a genuine issue of material fact as to whether an eight-week leave of absence followed by a request for an additional one-month leave was a reasonable accommodation under the ADA. 155 F.3d at 783. In *Walsh v. United Parcel Service*, 201 F.3d 718 (6th Cir. 2000), the Sixth Circuit held that "[w]hen . . . an employer has already provided a substantial leave, an additional leave period of a significant duration, with no clear prospects for recovery, is an objectively unreasonable accommodation." *Id.* at

727-28. "Reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) (citing *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995)). Leave requests are not generally found to be unreasonable as a matter of law unless they are of indefinite duration, or are in excess of one year. *See*, *e.g.*, *Corder v. Lucent Technologies, Inc.*, 162 F.3d 924 (7th Cir. 1998) (plaintiff had already received forty-three weeks leave in 1991, nineteen weeks in 1992, and nine weeks in 1993 before her termination); *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222 (11th Cir. 1997) (plaintiff had received approximately ten months of leave prior to termination); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755 (requested accommodation would have been an approximate one-year leave of absence).

The ADA provides that "reasonable accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices." 42 U.S.C. § 12111(9); *see also* 34 CFR § 104.12(b). A later start time may be a reasonable accommodation. *Alastra v. National City Corp.*, No. 08-CV-15265, 2010 WL 4739763 (E.D. Mich. Nov. 16, 2010). However, "employers are not required to create new positions for disabled employees in order to reasonably accommodate the disabled individual." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1187 (6th Cir. 1996). In an unpublished opinion, the Sixth Circuit refused to require an employer to convert a full-time position into a part-time position as an accommodation, noting that a request for a modified part-time work program was not reasonable because

"employers are not required to create new positions in order to reasonably accommodate disabled employees." *Lauby v. Swanson*, No. 96-3301, 1997 WL 561334, at *4 (6th Cir. Sept. 9, 1997) (unpublished).

The accommodation requested by Nelson was to be allowed to work four hours a day, five days a week, every other week, for some period of time after the conclusion of his six-month short-term disability leave.

Plaintiff contends that Nelson's request was for a definite and limited period of time. Nelson testified that he assumed he would have told Thumm that he needed to work the part-time schedule for 24 weeks (12 weeks of chemotherapy, and 12 weeks of work). (Nelson Dep. 60). However, he acknowledged that his memory was not very good during those times, and he deferred to Thumm's memory of what he requested. (Nelson Dep. 62).

Defendant characterizes Nelson's request as a request for an indeterminate period of time. Thumm testified that although Nelson anticipated that his chemotherapy would end in May of 2009 and that he would be able to return to full-time work after his chemotherapy ended, he was uncertain when he would be able to return to work on a full-time basis. (Thumm Dep. 83-84, 118, 154.) From Defendant's perspective, because Nelson had already been off for six months, his request for an additional five months made his ability to return to work on a full-time basis too uncertain to support the requested accommodation. (Mansfield Dep. 61-62.)

Because Nelson had already been on short term disability for six months when he requested an additional 24-weeks of part-time work every other week (the equivalent of one-

9

quarter time), his total request for medical leave came close to a full year. Although Defendant contends that Nelson's return to work at the conclusion of this period was uncertain, Thumm testified that it was anticipated that once his chemotherapy ended he would be able to work full-time. (Thumm Dep. 83.) Whether the accommodation proposed by Nelson was objectively reasonable is a question of fact for a jury.

**B. Undue Hardship**

Plaintiff also contends that summary judgment is not appropriate because there is no evidence that the proposed accommodation would cause undue hardship. If the plaintiff proposes an objectively reasonable accommodation, the burden shifts to the employer to show that an accommodation would impose undue hardship. *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998); 42 U.S.C. § 12112(b)(5)(A). Because there is a question of fact as to whether the accommodation proposed by Nelson was objectively reasonable, the Court must consider whether Defendant has shown that the accommodation would cause it undue hardship as a matter of law.

In determining whether an accommodation would impose an undue hardship, factors to be considered include:

    (i) the nature and cost of the accommodation needed under this chapter;

    (ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;

    (iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

> (iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C.A. § 12111(10)(B).

Defendant contends that Nelson's proposed accommodation would cause Defendant an undue hardship because Nelson's job was a full-time job and Defendant was in difficult financial straits.

Plaintiff contends that Defendant has failed to show undue hardship because other maintenance employees were working less than full-time, and Defendant produced no evidence that the accommodation was cost-prohibitive, or that it would negatively impact operations.

Although Nelson was able to perform the essential functions of his position when he was at work (Drake Dep. 57), his position was not a four-hour position. (Mansfield Dep. 81.) All of the maintenance positions at Defendant's were full-time positions. (Thumm Dep. 119; Mansfield Dep. 71; Drake Dep. 56.)  Although Plaintiff has attempted to show that other maintenance workers worked part-time, the evidence Plaintiff relies on shows just the opposite. (Pl. Ex. 22.) Plaintiff's chart lists only hours worked by a given employee, without including paid sick leave or vacation pay. (Pl.'s Resp. Br. 12, n.17.) If Plaintiff had included hours covered by paid sick leave or vacation leave, every maintenance employee was paid for between 36 and 40 hours every week.  Defendant's assertion that there were no part-time maintenance department positions has factual support.

Although Nelson's position was a full-time position, there is no evidence that Defendant had to hire anyone to work overtime, or that it had to use contract workers to cover for Nelson when he was working part-time in January. Daniel Drake testified that cost was not factored into the decision to terminate Nelson. (Drake Dep. 137.) Defendant nevertheless contends that because Nelson's position was a full-time position, it would have been a hardship on the people in the maintenance department who would have to pick up Nelson's hours, 20 hours one week, 40 hours the next, on an indefinite basis. (Mansfield Dep. 82.) Defendant has not presented any factual evidence to support its conclusory statement that Nelson's part-time work presented a hardship on the other maintenance employees.

Defendant has provided evidence that its overall financial resources were in difficult straits both before and after Nelson's request for accommodation. Earnings in the fourth quarter of 2008 were $32,000, which was dramatically less than the average of $800,000 per quarter for the first three quarters of 2008. (Pl. Ex. 25.) Defendant has also presented evidence that at the time Nelson was terminated, Defendant did not need as many employees because business was slowing down, and Defendant was working fewer shifts. (Thumm Dep. 119-20; Drake Dep. 64.) Defendant did not fill Nelson's position due to the revenue shortfalls and slow work demand. Defendant continued to reduce the number of people in the maintenance department throughout 2009: one employee retired, one was laid off, and no one was hired to replace them. (Nelson Dep. 86-87; Thumm Dep. 120-22; Drake Dep. 64; Mansfield Dep. 79.)

Defendant's own argument creates an issue of fact as to hardship. Although Defendant contends that the amount of work was decreasing, Defendant has not suggested that Nelson's job had been eliminated as of January 30. Defendant has not shown how paying Nelson part-time wages would have created any more financial hardship than paying him full-time wages. Defendant is not entitled to summary judgment on the basis of undue hardship.

**C. Mandatory Interactive Process**

To determine the appropriate reasonable accommodation for an employee, it may be necessary for an employer to initiate an informal, interactive process with the employee to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). The interactive process requires the employer and the employee to participate in the process and to communicate and explore possible accommodations in good-faith. *Kleiber v. Honda of Am. Mfg., Inc*., 485 F.3d 862, 871(6th Cir. 2007). The interactive process is an informal process. It does not have to follow any particular format. Moreover, "the employer is not required to propose a counter accommodation in order to participate in the interactive process in good faith." *Jakubowski*, 627 F.3d at 202-03.

Plaintiff contends that summary judgment is not proper because there is an issue of fact as to whether Defendant failed to engage in the mandatory interactive process in good faith. Plaintiff has not requested summary judgment in its favor on this issue. Because the Court has already determined that it will deny Defendant's motion for summary judgment

13

on Plaintiff's ADA claim, the Court need not consider the issue of the mandatory interactive process at this time.

**D.  Injunctive Relief**

Defendant argued in its motion that it is entitled to summary judgment on Plaintiff's request for injunctive relief because Defendant is no longer an operating entity.  Plaintiff did not respond to this argument.

The relief requested by Plaintiff in its complaint includes damages on behalf of Nelson and injunctive relief in the form of an order enjoining Defendant from engaging in employment practices which discriminate on the basis of disability, an order requiring Defendant to provide equal employment opportunities for qualified individuals with disabilities and which eradicate the effects of unlawful practices, and an order reinstating Nelson to his former position.  (Dkt. No. 1, Compl.)

Plaintiff has waived or abandoned its claim for injunctive relief by failing to present any argument or evidence supporting the claim either in its initial or in its supplemental response to Defendant's motion.  *See Kroll v. White Lake Ambulance Auth*, 2010 WL 3273057, at * 1 (W.D. Mich. Aug. 19, 2010).  In addition, Plaintiff's request for injunctive relief is moot because Defendant is no longer an operating entity.

**V.**

For reasons stated above, Defendant's motion for summary judgment will be granted as to Plaintiff's request for injunctive relief, and denied in all other respects.

An order consistent with this opinion will be entered.

Dated: <u>October 27, 2011</u>　　　　　　　　　　　　/s/ Robert Holmes Bell　　　　　　　　
　　　　　　　　　　　　　　　　　　　　　　　ROBERT HOLMES BELL
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE